503 So.2d 235 (1987)
Lawrence ALEXANDER
v.
STATE of Mississippi.
No. 56208.
Supreme Court of Mississippi.
February 18, 1987.
*236 Rabun Jones, Howard Dyer, III, Dyer, Dyer, Dyer & Jones, Greenville, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal from a Sunflower County conviction on a charge of possession of marijuana with intent to distribute presents two issues: a relatively straightforward probable cause question followed by a far more troublesome ineffective assistance of counsel claim. For the reasons set forth below, we hold both assignments of error without merit. On the latter we do so only because counsel's undeniably lackluster performance at trial nevertheless fails to undermine our confidence that a just verdict was returned.

II.
Lawrence Alexander, Defendant below and Appellant here, was born on August 1, 1945. On October 4, 1984, he was indicted by the Sunflower County Grand Jury and charged with the June 12, 1984, possession of 49.2 grams (approximately 1.722 ounces) of marijuana with intent to sell, barter, transfer, distribute or dispense. The case was called for trial on October 15, 1984, wherein the following factual scenario developed.
On June 12, 1984, Sunflower County Sheriff's Deputy Charles Smith, in response to information involving the stealing of some dynamite received from a confidential informant, cruised Church Street in Indianola, Mississippi. The same informant who had provided the dynamite information, which concerned an incident unrelated to the case at bar, had also told Deputy Smith that Alexander and Henry Peterson were known drug dealers who worked Church Street selling marijuana and who were probably armed. In addition, Deputy Smith had received anonymous telephone calls that Peterson and Alexander were selling drugs. Although both Peterson and Alexander had been arrested before on a drug charge, no convictions resulted.
While looking for the dynamite suspect, Deputy Smith made several trips up and down Church Street but saw nothing suspicious. Meeting another officer, Deputy White, Smith learned that White had earlier seen Peterson with a paper grocery bag. After several trips down Church Street, *237 Smith observed Peterson, seated on the hood of a car, abruptly place behind him a brown grocery bag, about twelve inches tall. Smith stopped his patrol car blocking all traffic and asked Peterson to approach. Glancing back at the grocery bag, Peterson complied. Smith then instructed Peterson to bring the bag to him. When Peterson returned and retrieved the bag and began sauntering away, Smith exited his vehicle and informed Peterson that if he ran, Smith would shoot him. When Peterson returned with the grocery bag, Smith opened it and found numerous small manila envelopes inside.
While the above events were transpiring, Alexander was seated on another automobile parked two to three feet away from the vehicle upon which Mr. Peterson had been seated and upon which the bag had been placed. Once Deputy Smith had the bag in his possession, he told Alexander to remain seated on the car. Alexander had just shifted his position on the car and Deputy Smith observed a bulge on Alexander's left side, but could not discern what caused it. At this point, another deputy arrived and they both approached Alexander who then made an attempt to slide off the car. As Deputy Smith and the other officer approached him, Alexander got off the car and began walking away. Deputy Smith admonished Alexander that if he moved off the car, he would be locked up. According to Deputy Smith, Alexander, then with his back toward the deputy, unbuttoned the top two buttons of his coat, which buttoned all the way from his navel to his neck. Upon seeing this, Deputy Smith, with his own revolver drawn, advised Alexander that if he touched a gun, he would be shot.
The deputy then approached Alexander and reached in his coat and removed a .38 caliber pistol from Alexander's left side. Alexander was then immediately frisked and a number of manilla envelopes containing almost all of the marijuana utilized ultimately to convict him as well as approximately $500.00 in cash were discovered upon him and seized.
The record does not reflect that a weapon was found on Peterson, who had been arrested and searched prior to the search of Alexander. Nevertheless, Deputy Smith testified that he suspected that the bulge in Alexander's coat was a firearm because his informant had told him that both Peterson and Alexander carried pistols.
All of the above events transpired at approximately 7:00 P.M. on June 12, 1984. The proof also showed that Alexander was, at the time of his arrest, in close proximity to a business establishment he was opening on Church Street. Also, the proof revealed that two hours transpired between the time Officer Smith initially saw Alexander and Peterson on Church Street and the time they were actually arrested.
On August 12, 1984, following advice and waiver of his Miranda rights, Alexander gave a statement which reads as follows:
I obtained the pistol that was taken from me by Deputy Charles Smith last Thursday from Roy Lee Hall for pawn of $75.00. I do not wish to make a statement concerning the marijuana that was taken from me. I also do not wish to make a statement about the money that Deputy Smith took from my socks and pockets.
This statement was received in evidence before the jury. On the important issue of intent, the evidence reflected that Alexander was found in possession of 39 sealed envelopes, each containing the equivalent of a nickel bag of marijuana, consisting the aggregate of 49.2 grams or 1.722 ounces. Alexander also had on his person some $500.00 in cash, a small date book which made references to several transactions involving various individuals and to "pounds" and "bags".
Deputy Sheriff Smith testified, without objection, that his confidential informant had advised him that Alexander was in the business of selling marijuana and that he and Peterson were joint venturers in this regard.
In his own defense Alexander took the witness stand and on cross-examination acknowledged that the marijuana was his and, after first insisting that it was all for *238 his personal use, conceded that a part of it was distributed to his friends. The following colloquy between the prosecuting attorney and Alexander is of importance in this regard:
Q. Your personal use. Thirty-nine nickel bags of Marijuana were for your personal use?
A. Thirty-nine nickel bags for my personal use  not as saying that I was smoking it. I have friends that do smoke it.
Q. So you kept it there to give to your friends?
A. No, not necessarily; not all of it.
Q. Not all of it, but some of it?
A. Right.
Q. I see. In other words, they don't pay you; you just give it to them?
A. Some of it.
In this state of the evidence the case was submitted to the jury which found Alexander guilty of unlawful possession of marijuana with intent to distribute, etc. Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1986). Alexander was sentenced to the custody of the Mississippi Department of Corrections for a period of twenty years, with ten years suspended, and in addition he was assessed a fine of $15,000.00. See Miss. Code Ann. § 41-29-139(b)(2) (Supp. 1986).

III.
On this appeal, Alexander makes no claim that the evidence was insufficient to undergird a conviction, nor could he with credibility. The evidence before the jury is such that reasonable men might easily have found beyond all reasonable doubt that Alexander was indeed in possession of more than an ounce of marijuana with intent to sell.
Instead, Alexander assigns as errors, first, that the Circuit Court committed error when it overruled his pretrial motion to suppress, Alexander's argument being that there was no probable cause for his being detained and searched on June 12, 1984. Second, Alexander charges that he was denied effective assistance of counsel.
On October 11, 1984, prior to trial, Alexander filed a motion to suppress asserting that the marijuana seized from him was taken in violation of his Fourth Amendment rights in that Deputy Smith proceeded on the occasion in question without probable cause. The record reflects, however, that Smith had information from a confidential informant that Alexander was selling marijuana and that Church Street in Indianola, Mississippi, was his place of business. Added to this information were several previous anonymous telephone calls to the effect that Alexander and Peterson were selling drugs. Deputy Smith observed Alexander and Peterson on Church Street where they were expected to be found. The trial judge held that, considering
Among other things, the totality of the circumstances surrounding the incident out of which the arrest arises, what the officer knew, the source of his information, and what he observed including the actions of the participants as men and what they did and how they acted; and the court is the of the opinion that the arrest was justified, that it was legally justified; that is to say that the officer had probable cause to make the arrest.
Without dispute, of course, the search was incident to the arrest. Accordingly, the motion to suppress was denied.
In Gandy v. State, 438 So.2d 279 (Miss. 1983) this Court articulated the following rule:
Before a warrantless yet lawful arrest could be made, it was not necessary that ... [the police] have reasonably believed beyond a reasonable doubt that ... [the defendant] was involved in a cocaine deal... . [The police] need only have entertained a reasonable belief that ... [the defendant] was involved  a belief rising above mere unfounded suspicion.
438 So.2d at 283.
This rule is reiterated in Moore v. State, 493 So.2d 1295 (Miss. 1986); Henry v. State, 486 So.2d 1209 (Miss. 1986); Riddles v. State, 471 So.2d 1234 (Miss. 1985).
In the context of an application for a search warrant, we have adopted the "totality *239 of the circumstances" approach for determining whether probable cause exists. Breckenridge v. State, 472 So.2d 373, 376-77 (Miss. 1985); Lee v. State, 435 So.2d 674, 676 (Miss. 1983). That approach is essentially the same as we have taken in defining probable cause in the case of warrantless arrests in Gandy and the other cases cited above. The officer involved is charged to make a practical, commonsense decision whether, given the totality of the circumstances, there is a fair probability that the person proposed to be arrested or searched is involved in substantial criminal activity.
Having in mind the aforesaid rules, and giving due deference to the trial judge's findings of fact, we are of the view that Deputy Smith had probable cause to arrest Alexander and to search him incident to that arrest. This assignment of error is without merit and is denied.

IV.
Alexander next charges that he was denied effective assistance of counsel in violation of his rights secured by the Sixth and Fourteenth Amendments to the Constitution of the United States as well as Article III, §§ 14 and 26 of the Mississippi Constitution of 1890. He presents the point on direct appeal, Read v. State, 430 So.2d 832, 841 (Miss. 1983), and argues that denial of these rights proximately resulted in his conviction of possession of marijuana with intent to sell.
This assignment of error is quite troublesome, but it must be understood in context. We begin with the proposition that marijuana is a Schedule I controlled substance. Miss. Code Ann. § 41-29-113(c)(11) (Supp. 1986). Simple possession of the quantity of marijuana found on Alexander upon conviction carries a maximum penalty of three years imprisonment or a $3,000.00 fine or both. Miss. Code Ann. § 41-29-139(c)(2)(C) (Supp. 1986). On the other hand, where the prosecution is able to prove not only possession but also intent to distribute, the maximum penalty becomes twenty years imprisonment or a $30,000.00 fine or both. Miss. Code Ann. § 41-29-139(b)(2) (Supp. 1986).
Alexander's point on this appeal is that, but for his trial attorney's ineffectiveness, the State would have been wholly unable to establish intent to distribute. As a practical matter, his maximum liability would then have been the penalty noted above for unlawful possession of more than an ounce of marijuana: three years or $3,000.00 or both. This is considerably less than the sentence imposed in the court below.
One complaint of Alexander's new appellate counsel is that trial counsel incompetently failed to object when Deputy Smith testified that his confidential informant stated that Alexander was in the business of selling marijuana. This was certainly hearsay testimony, indeed, double hearsay, and had Alexander's trial counsel objected, we have no doubt that the objection would have been sustained. Had this objection been made and this hearsay testimony excluded, the prosecution's evidence of intent would have been wholly circumstantial, possession of 39 nickel bags of marijuana, together with $500.00 cash, and a small datebook making reference to several transactions involving various individuals, and to "pounds" and "bags". Not unmindful of our less than wholly consistent case law in this area, see, e.g., Coyne v. State, 484 So.2d 1018, 1022 (Miss. 1986); Keys v. State, 478 So.2d 266, 268 (Miss. 1985); Breckenridge v. State, 472 So.2d 373, 375 (Miss. 1985); Bryant v. State, 427 So.2d 131 (Miss. 1983); Martin v. State, 413 So.2d 730 (Miss. 1982); and Hollingsworth v. State, 392 So.2d 515, 517-18 (Miss. 1981), we are of the view that this evidence was sufficient to withstand a motion for directed verdict of acquittal at the end of the prosecution's case (a motion, we need add, which was never made).
Alexander's appellate counsel is super critical of trial counsel's decision to have Alexander take the witness stand in his own defense. This, of course, led to the cross-examination referred to above wherein Alexander admitted that he gave marijuana to some of his friends. Without doubt, these admissions sealed his fate on the question of intent to distribute. Quite *240 candidly it is difficult to imagine why trial counsel exposed Alexander to such cross-examination. While ordinarily the decision of trial counsel to put the accused on the stand would be one which as a matter of trial strategy we would make no attempt to second guess, this one seems quite dubious.
Finally, the record makes it appear that Alexander's trial counsel was laboring under the delusion that the proper way to defend the case was to try the legality of the arrest and search to the jury. We find no serious effort at trial on the part of Alexander's counsel to convince the jury or anyone else that Alexander was not guilty. Rather, he tried to sell the idea that the arrest and search were illegal. Instruction No. 3, refused by the court, supports this hypothesis, as does counsel's motion at the end of the trial apparently challenging again the legality of the arrest. Having formulated this "strategy," Alexander's trial counsel did not object to the hearsay testimony because such testimony is admissible on a motion to suppress. U.S. v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Contrary to the trial counsel's delusion, a long line of cases suggests that the legality of an arrest and search is a question solely for the judge, who is ruling on the admissibility of evidence resulting from search and seizure. See Anthony v. State, 220 So.2d 837 (Miss. 1969); McNutt v. State, 143 Miss. 347, 108 So. 721 (1926); Ingram v. State, 146 Miss. 303, 111 So. 362 (1927); Holmes v. State, 146 Miss. 351, 111 So. 860 (1927); Story v. City of Greenwood, 153 Miss. 755, 121 So. 481 (1929); Salisbury v. State, 293 So.2d 434 (Miss. 1974); and Mapp v. State, 148 Miss. 739, 114 So. 825 (1927); State v. Smith, 477 So.2d 893 (La. 1985); Bretti v. Wainwright, 439 F.2d 1042 (5th Cir.1979); U.S. v. Aldrete, 414 F.2d 238 (5th Cir.1969).
Appellant Alexander now claims that the question before this Court is whether he received effective assistance of counsel "where his trial counsel's strategy had no legal foundation upon which to stand." Alexander asserts that to claim that he received effective assistance of counsel when his counsel's trial "strategy" was based on a clearly erroneous idea of the jury's role in the suppression of evidence is beyond comprehension. Such "strategy," maintains Alexander, demonstrates that his counsel was deficient and that his counsel's "strategy" was prejudicial because it led to the admission of damaging hearsay evidence as well as to Defendant Alexander taking the stand and thereby irreparably damaging himself.
The United States Supreme Court has recently set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) an exposition of the test used in determining adequacy of counsel for purposes of the Sixth and Fourteenth Amendments, a test dutifully employed by this Court, see, e.g., Leatherwood v. State, 473 So.2d 964 (Miss. 1985); Lambert v. State, 462 So.2d 308 (Miss. 1984); Stringer v. State, 454 So.2d 468 (Miss. 1984). The Strickland test has two components: The defendant, who bears the burden of proof, must show that the counsel's performance was (1) deficient and that (2) the deficient performance prejudiced the defense. If the defendant fails to prove either component, reversal is not warranted. Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985).
In order to meet the second prong of the test  prejudice to the defense  the defendant must show "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Lambert v. State, 462 So.2d 308, 316-17 (Miss. 1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. 462 So.2d at 316-17. A recent Fifth Circuit case, Martin v. McCotter, 796 F.2d 813 (5th Cir.1986) has added that the defendant need not show that counsel's deficient conduct more likely than not altered the outcome of the case.
Having this standard in mind, and having considered the record with care, we are unable to conclude that counsel's unquestionably deficient performance at trial undermines our confidence in the outcome. Assuming the jury had never heard the evidence which competent counsel most likely would have been able to keep under wraps, we are of the view that there was still sufficient evidence to suggest to any reasonable mind that Alexander was on *241 June 12, 1984, in possession of more than an ounce of marijuana with intent to transfer, distribute or dispense. Alexander thus fails on the second prong of the Strickland test, in consequence of which we need not consider the first. Strickland v. Washington, 466 U.S. at 691-96, 104 S.Ct. at 2066-69, 80 L.Ed.2d at 696-99.
In sum, we are unable to conclude from this record that Alexander's rights secured by the Sixth and Fourteenth Amendments to the United States Constitution or by Article 3, Section 26 of the Mississippi Constitution of 1890 have been abridged. See Ward v. State, 461 So.2d 724, 727 (Miss. 1984); Thames v. State, 454 So.2d 486, 488 (Miss. 1984); Read v. State, 430 So.2d 832, 841 (Miss. 1983). The assignment of error is denied.
CONVICTION OF SALE OF MORE THAN ONE OUNCE BUT LESS THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO SELL, BARTER, TRANSFER, DISTRIBUTE OR DISPENSE AND SENTENCE OF TWENTY (20) YEARS IMPRISONMENT, WITH TEN YEARS SUSPENDED, AND A FINE OF FIFTEEN THOUSAND DOLLARS ($15,000.00) AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.