This case, involving the manufacture of methamphetamine, a schedule II controlled substance, comes to the Court from the Circuit Court of Leake County. Upon conviction, the trial court sentenced the defendant, Ray M. Waldrop, to serve thirty (30) years without benefit of probation or parole. We reverse.
On September 14, 1984, Leake County Sheriff Joe Mack Thaggard and four state criminal investigators, arrested Ray M. Waldrop on a parole violation, pursuant to a teletype from the National Crime Information Center, (NCIC). Prior to the arrest, police also had information that Waldrop was an acquaintance of an area resident, Mary Lube, and ran a drug laboratory.
A few hundred yards from the arrest scene, a home construction site, police passed a mobile home where Lube's automobile had previously been seen parked in the drive. Louisiana State Police reported that the mobile home, owned by Lube, was Waldrop's residence before its move to Mississippi in August, 1984. On the day of the arrest, police again passed the mobile home from which emanated a "terrible odor", similar to ether, a compound in the manufacture of methamphetamine.
Though Waldrop possessed the mobile home's keys, he denied, following his arrest, any ownership interest in the trailer, stating that it belonged to Lube. Believing a consent to search less difficult to obtain than a warrant, the police asked Waldrop of Lube's whereabouts. Subsequently, Deputy Bobby Brown transported Lube to the sheriff's office, where, followingMiranda warnings, she signed a consent to search; yet, according to the officers, Lube was not under arrest at this time. However, it appears she had been transported without her consent. At the least, she didn't hitchhike a ride with the deputy.
Armed with the consent form, the police entered the mobile home, finding laboratory equipment as well as methamphetamine manufactured sometime within the preceding twenty-four hour period. Significantly, Waldrop told police that he had been at the mobile home as recently as three hours prior to his arrest, and six hours prior to the search, though he denied that there had been any laboratory apparatus or odor present at the time.
 I.
During oral arguments, this Court allowed the defense to raise the issue of ineffective assistance of counsel at trial, *Page 275 
permitting the State to respond, in turn.[1] Properly before the Court then, under Miss.Sup.Ct.Rule 6(b), we discuss the issue, and error, here.
Regretably, the trial transcript is replete with instances of deficient performance, sufficient to prejudice Waldrop's defense. For example, without objection, the State elicited testimony from Sheriff Thaggard that United States marshals were seeking Waldrop on a parole violation (i.e., possession of counterfeit plates) and for escape from such parole. Later, when the State tendered the teletype for identification, defense counsel objected, stating that the witness had testified incorrectly as to the NCIC report. Understandably, the trial judge then asked, "Is that your only objection?" When defense counsel answered in the affirmative, the trial judge overruled the objection, allowing it to be marked. Afterwards, defense counsel himself introduced the NCIC report into evidence, so as to question another witness on its contents more fully.
Elsewhere in the record defense counsel questioned Sheriff Thaggard and two other witnesses concerning reports from the Louisiana State Police that Waldrop, while in Louisiana, illegally manufactured methamphetamine. Undoubtedly, such allusion to other crimes was highly prejudicial to Waldrop's defense.
Moreover, defense counsel engaged in other conduct manifesting his ineffectiveness. Examples include numerous frivolous motions, repeated refusals to follow rulings and instructions from the bench, and even a request for elementary information, ("How do I introduce [an exhibit], Your Honor?").
It is by this time well-established that the Sixth Amendment guarantees to criminal defendants not only the right to assistance of counsel, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), but requires that assistance to be legally "effective." Concomitantly, this Court has embraced a right to effective assistance of counsel inherent in the due process clause of the state constitution, Art. 3, § 14, Miss. Const. of 1890, and has traditionally reversed convictions evidencing inadequate defense. Specifically, in Brooks v.State, 209 Miss. 150, 154, 46 So.2d 94, 96 (1950), the conviction was reversed where defense counsel made no objection to "highly improper and prejudicial" tactics and questions of the State; therein we noted that "If objections had been made on the questions pointed out above, and such objections had been overruled, a reversal would be obvious." Likewise, in Stewart v.State, 229 So.2d 53, 55 (Miss. 1969), we reversed a conviction where defense counsel failed to ask any questions, lodge any objections, call any witnesses, or request any instruction. Seealso, Brown v. State, 224 Miss. 498, 500, 80 So.2d 761, 762 (1955).
Since the advent of the holding in Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have ascribed to the two-prong analysis of ineffectiveness allegations fashioned by the United States Supreme Court. Thereby, there exists a two-fold inquiry into the issue of ineffective assistance of counsel, focusing on (1) whether counsel's performance was deficient, and if so, (2) whether the deficient performance was prejudicial to the defendant. See also,Alexander v. State, 503 So.2d 235, 240 (Miss. 1987);Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985); Lambertv. State, 462 So.2d 308, 316 (Miss. 1984); Thames v. State,454 So.2d 486, 487 (Miss. 1984). Though there is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Gilliard v.State, 462 So.2d 710, 714 (Miss. 1985), this Court must determine, based on the totality of the circumstances, whether counsel's efforts were both deficient and prejudicial, thus necessitating a reversal. Read v. State, 430 So.2d 832, 839 (Miss. 1983).
In the present case, defense counsel committed errors far beyond those of omission: he introduced such prejudicial evidence that, had the State won its admission over objection, a reversal would be necessary. *Page 276 
In short, defense counsel not only failed to defend his client effectively, but also aided, albeit unwittingly, the prosecution. We cannot by any stretch of the imagination construe this action as legitimate strategy for any competent criminal defense attorney.
Having found errors of the magnitude contemplated byStrickland, we next analyze their probable impact on the fairness of Waldrop's trial. Under this the second focus of theStrickland test, reversal must be predicated on a finding "that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 695-696, 104 S.Ct. at 2069, 80 L.Ed.2d at 698-99. This "reasonable probability" is such as would be sufficient to undermine confidence in the outcome of the trial, a conclusion we easily reach in light of the gross malfeasance evidenced in this record. See Neely v. Cabana,764 F.2d 1173 (5th Cir. 1985). Accordingly, we hold that Waldrop was denied the effective assistance of counsel guaranteed him by both the state and federal constitutions.
Finally, we must address a remark of the judge threatening defense counsel with the jailhouse while the jury was present.
We are inclined to be sympathetic with the judge, and understand why an exhibition of temper may have occurred. The trial judge on several occasions had admonished defense counsel about continuing ineffectual and repetitive cross examination of the State's witnesses which he had again called for the defense, stating to him in no uncertain terms that he was providing the State with evidence that was inadmissible and detrimental to his client. Nevertheless, defense counsel persisted and finally, stated colloquially, the judge "lost his cool", and advised defense counsel that he was going to spend some time as a guest of the county government. Under the circumstances, we understand the reason for the judge's conduct; however, we cannot approve it because of its possible effect on the jury. Stewart v. State,263 So.2d 754, 758 (Miss. 1972); Rucker v. State, 248 Miss. 65, 73, 158 So.2d 39, 42 (1963); Pegram v. State, 223 Miss. 294, 302, 78 So.2d 153, 156 (1955); Collins v. State, 99 Miss. 47, 51, 54 So. 665, 666 (1911).
Looking at the trial from its four corners, we find that the defendant was denied effective assistance of counsel and a fair trial.[2]
 II.
Waldrop also asserts various other assignments of error, all of which are remediable at a new trial. For example, Waldrop maintains that Lube's consent to search the trailer was obtained under duress. On retrial, the State may further develop testimony of the officers present, especially that of Deputy Brown, concerning his conversation with Lube when he arrived to transport her to the sheriff's office.
Additionally, Waldrop may now properly request the alleged report on the grayishwhite powder found near the trailer, compiled by the Mississippi Crime Lab. See, Morris v. State,436 So.2d 1381, 1387 (Miss. 1983).
Finally, should a second trial result in a conviction, the defendant should be afforded the opportunity to offer such proof as he may have concerning his identity as the individual previously convicted in Louisiana and the United States District Court for the Southern District of Alabama, or any other defense he may have thereto. Dalgo v. State, 435 So.2d 628, 630 (Miss. 1983); Wilson v. State, 395 So.2d 957, 960 (Miss. 1981).
Consistent with the above, we reverse and remand for a new trial.
REVERSED AND REMANDED. *Page 277 
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
[1] On appeal, Waldrop was ably represented by new counsel.
[2] In Mississippi State Highway Commission v. Deavours,251 Miss. 552, 564-65, 170 So.2d 639, 645 (1965), Judge Robert Jones, writing for the Court, stated, "Everybody, including the Highway Commission, is entitled to a fair trial." Here, we paraphrase and state: Everybody, including an habitual offender, is entitled to a fair trial.