515 So.2d 1154 (1987)
William E. BURNEY
v.
STATE of Mississippi.
No. 57078.
Supreme Court of Mississippi.
November 18, 1987.
Rehearing Denied December 9, 1987.
*1155 Cleve McDowell, Drew, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Presiding Justice, for the Court.
William E. Burney was indicted on January 24, 1983, by a Yalobusha County grand jury for attempted armed robbery and for burglary of an inhabited dwelling with a deadly weapon. Mr. Burney was tried and convicted on those charges in August 1983. These convictions were later vacated.
On August 2, 1984, Mr. Burney was retried for the offense of attempted armed robbery and burglary of an inhabited dwelling with a deadly weapon. Those cases were consolidated for trial. The jury found Mr. Burney guilty of both charges and fixed his punishment at life imprisonment for the attempted armed robbery. After conducting a bifurcated sentencing hearing on the burglary charge, the court sentenced Mr. Burney for a term of 20 years in prison, such sentence to run consecutively to the life term imposed by the jury on the armed robbery conviction. Mr. Burney appeals from that lower court judgment and assigns ten errors.
We affirm.

FACTS
On October 11, 1982, Herman White and his wife, Lillian, were at their home at 216 South Main Street, Water Valley. About 7:00 o'clock that evening Mr. White went to the front door in response to the bell. Mr. White turned on the porch light, opened the curtain, and observed "a large young man" dressed in a suit. At that time the door was chained. Mr. White "opened the door the length of the chain" and asked the man, "What do you want?"
Mr. Burney asked Mr. White whether he knew Harvey Harris; Mr. White replied that he had known Mr. Harris all his life. At that point Mr. Burney asked Mr. White if he would like to buy some insurance. Mr. White responded that his age and his *1156 health precluded his obtaining insurance but Mr. Burney persisted. After several exchanges Mr. White started to push the door shut, but Mr. Burney pulled a gun and knocked the chain loose.
Mrs. White had come to the door during the earlier dialogue, and when Mr. Burney started pushing against the door both of the Whites fell against it. However, Mr. Burney entered the house, pushed the gun into Mr. White's chest and demanded $3,000. At that point Mrs. White tried to grab Mr. Burney by the throat. She then ran from the house, screaming for help.
Mr. Burney continued to thrust the gun at Mr. White and demand $3,000 until Mr. White observed through the curtained window that people were beginning to gather at the front door. At that point Mr. Burney wanted Mr. White to take him to where they could get $3,000, turned around and he, too, saw these people gathering at the front door. Mr. Burney handed Mr. White his gun, saying "Take the gun." "It's the police," and that from there on the police took over.
Mr. Burney's explanation of these events is that he had gone to Mr. White on advice of a friend to ask for a second job (Mr. Burney was employed at the time) to help clear away some of his debts. He offered to sell Mr. White insurance as a way to open the conversation. When Mrs. White entered the room, she misunderstood the situation, became frightened and, according to Mr. Burney, grabbed him by the throat. Mr. Burney became frightened and pulled his gun, a gun he claims to always carry. After Mrs. White ran from the house, Mr. Burney handed the gun to Mr. White, apologized for the misunderstanding, and waited on the porch for the police to arrive.

I.

THE TRIAL COURT ERRED IN ALLOWING THE IMPROPER CONSOLIDATION OF THE SEPARATE INDICTMENTS FOR TRIAL.
Mr. Burney was charged with two separate offenses, each carrying different penalties and each consisting of different elements. Mr. Burney contends that under Stinson v. State, 443 So.2d 869 (Miss. 1983) and its progeny, the trial court erred in allowing consolidation of these two offenses at trial. Stinson, however, deals with the problem of multi-count indictments, which this Court has repeatedly prohibited. See also Brock v. State, 483 So.2d 358 (Miss. 1986); Thomas v. State, 474 So.2d 604 (Miss. 1985); Johnson v. State, 452 So.2d 850 (Miss. 1984); Bennett v. State, 451 So.2d 727 (Miss. 1984); Friday v. State, 462 So.2d 336 (Miss. 1985). Mr. Burney was not indicted by multi-count indictment, but, rather, with two separate indictments. The Stinson line of cases is inapplicable here.
Furthermore, Mr. Burney requested that these two offenses be consolidated for trial. The state correctly argues that Ward v. State, 461 So.2d 724 (Miss. 1984) controls this situation:
We recognize that there is no error in consolidating for trial separate and distinct indictable offenses where the defendant has so requested.
Ward at 726. This Court finds that this assignment of error without merit.

II.

THE TRIAL COURT ERRED IN ALLOWING IMPROPER AND UNCONSTITUTIONAL CLOSING ARGUMENTS AND REMARKS BY THE PROSECUTOR.
Mr. Burney contends that the prosecuting attorney made many improper remarks in closing argument. He cites 12 specific remarks as being particularly prejudicial. Most of these remarks refer to either a personal friendship between the prosecutor and the victim, a personal attack on defense counsel, a personal belief in defendant's guilt, or a statement that defendant lied to keep from going to the penitentiary. Defense counsel made no objection throughout the closing argument, but did object in his motion for a new trial. In Johnson v. State, 477 So.2d 196, 208-209 (Miss. 1985), this Court addressed similar remarks made by the prosecutor in closing argument. In Johnson, defense *1157 counsel did not make contemporaneous objection to the remarks, but waited until the close of the argument to make objections for the record. Id. at 207, 210. This Court observed:
[T]he state and defense counsel should be given wide latitude in their argument to the jury... . Courts should be very careful in limiting the free play of ideas, imagery and personalities of counsel in their argument to a jury.
Id. at 209. The Court further stated:
We next observe it is the duty of a trial counsel, if he deems opposing counsel overstepping the wide range of authorized argument, to promptly make objection and insist upon a ruling by the trial court... . If the argument is improper and the objection is sustained, it is the further duty of trial counsel to move for a mistrial.
Id. at 210. Clearly, these observations by the Court apply equally as well to Mr. Burney's case.
Therefore, the Court finds that this assignment of error is without merit.

III.

THE TRIAL COUNSEL OF RECORD RENDERED INEFFECTIVE ASSISTANCE IN THE TRIAL.
Mr. Burney alleges that because the lower court failed to grant his ore tenus motion for appointment of substitute counsel on the grounds that counsel was inadequately prepared for trial, the defendant became uncooperative and did not effectively assist counsel in the preparation and presentation of his defense. It seems an untenable proposition to this Court to base a claim of ineffective assistance of counsel upon the defendant's uncooperativeness. Mr. Burney raised the issue on a pre-trial motion that his court-appointed attorney be allowed to withdraw. The trial judge examined Mr. Burney under oath about his financial situation and determined that Mr. Burney was indigent and eligible for court-appointed counsel. The trial court also examined Mr. Burney as to why he was displeased with the work his counsel had done. The pertinent reason was that his counsel did not "have his heart" in representing him. The trial judge found, on a review of the court file, that the attorney was "very diligent" in trial preparation and is "very competent" [and] "able." The trial judge denied the motion to allow the attorney to withdraw. Mr. Burney raised the issue again on motion for a new trial, which was overruled.
Mr. Burney, in essence, raised a claim of ineffective assistance of counsel through his motion for substitute counsel. Although it is somewhat unusual to raise this claim at this point in the proceedings, the trial judge wisely carried out a hearing and made findings of fact. Because the trial judge is far better equipped than we are to make such findings of fact, and under our limited scope of review on such findings, we will not disturb his ruling where it is substantiated by the record. Gavin v. State, 473 So.2d 952 (Miss. 1985); Johnson v. State, 475 So.2d 1136 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984).
Furthermore, Mr. Burney has not met the two prongs of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in alleging ineffective assistance. See also, Faraga v. State, 514 So.2d 295 (Miss. 1987); King v. State, 503 So.2d 271 (Miss. 1987); Alexander v. State, 503 So.2d 235, 240 (Miss. 1987); Knox v. State, 502 So.2d 672, 676 (Miss. 1987); Odom v. State, 498 So.2d 331, 334 (Miss. 1986); Evans v. State, 485 So.2d 276, 280-81 (Miss. 1986); Wilcher v. State, 479 So.2d 710, 712 (Miss. 1985); Billiot v. State, 478 So.2d 1043, 1046 (Miss. 1985); Thames v. State, 454 So.2d 486, 487 (Miss. 1984), and Stringer v. State, 454 So.2d 468, 478 (Miss. 1984). Review of the record does not reveal any breakdown of the adversary process due to the assistance rendered by Mr. Burney's trial counsel. On the contrary, trial counsel performed well under the facts of this case where there was such overwhelming proof against his client. This assignment of error is without merit.

*1158 IV.

THE INDICTMENT AGAINST THE DEFENDANT AS DRAWN FAILED TO CHARGE AN OFFENSE AGAINST THE STATE OF MISSISSIPPI.
Under this assignment, Mr. Burney argues several points concerning the charge of attempted armed robbery: A) that the indictment was vague; B) that the state did not prove an overt act because it failed to prove intent to steal; C) that the attempt was not frustrated by extraneous intervention, and D) that the guilty verdict as to this charge was against the overwhelming sufficiency and weight of the evidence and, therefore, the trial court should have granted the motion for j.n.o.v. or a motion for a new trial.

A.
As to the allegation that the indictment for attempted armed robbery was vague, Mr. Burney's argument is clearly without merit. The indictment practically mimics Miss. Code Ann. § 97-3-79 (1972 & Supp. 1986), which sets out the offense. Furthermore, it complies with Rule 2.05 of the Uniform Criminal Rules of Circuit Practice. This Court has also held that the language of this indictment is sufficient to charge the defendant with intent. McFadden v. State, 408 So.2d 476, 481 (Miss. 1981); Thomas v. State, 278 So.2d 469, 471 (Miss. 1973).

B.
Mr. Burney next alleges that the state failed to prove an overt act to support the attempted armed robbery charge because it failed to prove intent to steal. This Court has pointed out that an attempt to commit a crime consists of three elements: 1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission, and 3) the failure to consummate its commission. Murray v. State, 403 So.2d 149, 152 (Miss. 1981); Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968). Mr. Burney argues that the state failed to prove intent because when Mr. White offered him his wallet with $50 in it, Mr. Burney refused to take it. Mr. White testified that the reason Mr. Burney refused the wallet was because he wanted $3,000. Mr. Burney testified that he refused the wallet because the whole incident was a misunderstanding and he did not intend to steal any money from Mr. White. This issue of intent, then, comes down to which witness the jury believed.

C.
Mr. Burney next argues that even if there was evidence of intent to steal, the attempt to steal was not aborted by extraneous intervention but, rather, by Mr. Burney himself. Mr. Burney correctly cites West v. State, 437 So.2d 1212, 1214 (Miss. 1983) for the proposition that the attempt must have been frustrated or prevented by extraneous causes before he can be charged with the attempt under this statute. It is undisputed that the police arrived on the scene as a result of Mrs. White running for help; there is a dispute as to whether or not the police intervention frustrated the attempt. Mr. Burney testified that he handed Mr. White his gun as soon as he realized there was a misunderstanding. Mr. White, however, testified that Mr. Burney gave up the attempt to rob him only when he realized the police had arrived. Officer Eady testified that Mr. Burney was on the front porch waiting when he arrived on the scene and that Mr. White was inside the house with the gun. Again, the issue of frustration by extraneous causes comes down to which witness the jury believed.

D.
Mr. Burney's final point under this assignment of error is that, for the above reasons, the verdict was against the weight and sufficiency of the evidence and that the trial judge erred in not granting his motion for j.n.o.v. or motion for a new trial. As pointed out above, these issues came down to which witness the jury believed. As to credibility of witnesses, this Court has stated:
[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and *1159 worth of their testimony... . We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others... . In other words, the credibility of witnesses is not for the reviewing court.
Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). See also Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). The jury in this case apparently believed the state's witnesses as to intent and frustration.
As for the motion for j.n.o.v., this Court has stated:
[O]nce the jury has returned a verdict of guilty in a criminal case, we are not at liberty to direct the defendant be discharged short of a conclusion on our part that given the evidence, taken in the light most favorable to the verdict, no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.
Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983). See also, May v. State, 460 So.2d 778, 781 (Miss. 1984). Again, because these issues turned on the credibility of the witnesses, and because it is the jury's province to settle such issues, the trial court did not err in denying the motion for j.n.o.v.
Finally, as to the motion for new trial, the Court has stated:
A greater quantum of evidence favoring the State is necessary for the State to withstand a motion for a new trial, as distinguished from a motion for j.n.o.v. Under our established case law, the trial judge should set aside a jury's verdict only when, in the exercise of his sound discretion, he is convinced that the verdict is contrary to the substantial weight of the evidence.
Pearson at 1364. See also May v. State, 460 So.2d at 781. The Court has further stated:
We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice.
Pearson at 1364; see also Robinson v. State, 473 So.2d 957, 964 (Miss. 1985); Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). In his sound discretion, the trial judge in this case was not convinced that the verdict was contrary to the weight of the evidence. This Court finds that the trial judge did not abuse his discretion.
In conclusion, the Court finds that this assignment of error, with its four subparts, is without merit.

V.

THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.
Under this assignment of error Mr. Burney specifically alleges that the state failed to prove one element of the burglary charge  "in the nighttime"  and that, therefore, the jury's verdict was contrary to law. The common law definition of night is set out in Eastwood v. State, 415 So.2d 678, 679 (Miss. 1982):
Night is that period between the sunset of one day and sunrise of the next day during which there is not enough daylight or twilight to discern a man's face.
At trial, there was testimony from several witnesses that the incident occurred on October 11, around 7:00 o'clock in the evening. The question thus becomes whether or not the time of day fell within the common law definition. The jury was properly instructed as to the law and heard the testimony of the witnesses. It was up to the jury to decide this issue. In Pryor v. State, 349 So.2d 1063, 1064 (Miss. 1977), this Court stated:
It is well established in Mississippi that a jury, as the finder of fact, is entitled to consider not only facts as testified to by witnesses, but all inferences that may be reasonably and logically deduced from the facts and evidence.
From these facts, the jury could find that the incident happened at night. We find this assignment of error without merit.

VI.

THE COURT ERRED IN REFUSING TO SEQUESTER THE JURY.
Under this assignment of error Mr. Burney alleges that the trial court abused *1160 its discretion by not sequestering the jury because 44 out of 60 jurors at voir dire had previously heard the facts of the case and/or had formed an opinion adverse to the defendant. This argument does not logically support the assignment of error based on sequestration of the jury. It rather seems to support assigned error No. 10, failure to grant a change of venue.
This case falls under Rule 5.07, Uniform Criminal Rules of Circuit Court Practice. Since this is not a death penalty case, the jury may be sequestered upon request of either the defendant or the state if made 48 hours in advance of the trial. The trial judge, in his sound discretion, may grant or deny the request. Griffin v. State, 492 So.2d 587, 588 (Miss. 1986). Mr. Burney made a timely request for sequestration of the jury, arguing that sequestration was necessary because the victims were prominent in the community. The trial judge heard arguments on the motion, both sides acknowledging that the decision was discretionary with the court. The trial judge denied the motion. Throughout the trial, the trial judge was diligent in ascertaining from jurors after every recess whether there had been any improper contact.
There is nothing in this record to suggest that the trial court abused its discretion in denying the motion for sequestration of the jury. We find no merit in this assignment of error.

VII.

THE COURT ERRED IN REFUSING TO GRANT APPELLANT'S JURY INSTRUCTION D-1.

VIII.

THE COURT ERRED IN REFUSING TO GRANT APPELLANT'S JURY INSTRUCTION D-2.

IX.

THE COURT ERRED IN REFUSING TO GRANT APPELLANT'S JURY INSTRUCTION D-3.
Mr. Burney assigns as error the trial court's refusal to grant these three jury instructions. None of these jury instructions appear in the record. This Court has stated that "[w]e have on many occasions held that we must decide each case by the facts shown in the record, not assertions in the brief... ." Mason v. State, 440 So.2d 318, 319 (Miss. 1983). And, further, "[t]o the appellant falls the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal." Robinson v. State, 345 So.2d 1044, 1045 (Miss. 1977). Accord Baugh v. State, 388 So.2d 141, 143 (Miss. 1980); Rhodis v. State, 349 So.2d 1046, 1047 (Miss. 1977). Therefore, we find these three assignments without merit.

X.

THE COURT ERRED IN REFUSING TO GRANT THE APPELLANT A CHANGE OF VENUE.
Mr. Burney filed his motion for change of venue along with four affidavits stating that he could not obtain a fair trial in Yalobusha County. Mr. Burney thus complied with the first requirement set out in Johnson v. State, 476 So.2d 1195, 1210-11 (Miss. 1985), to raise the presumption of a right to change of venue, a presumption which the state must then rebut. Id. At the hearing on the motion, four witnesses testified that they had heard some talk about the case; one admitted that he had not heard anything for a month or two. Five witnesses testified for the state. Four of them testified that they had spoken to hundreds of people throughout the county and had heard no expressions about the case one way or the other. The fifth witness, editor of the North Mississippi Herald, testified that the newspaper publicity on the case amounted to one short piece in one edition and a short paragraph in another. Based on all this testimony, the trial judge denied the motion for change of venue but allowed for renewal of the motion at the close of voir dire. On renewal, the defendant argued that 44 out of 60 prospective jurors had either heard something *1161 of this case or knew the victims personally. Johnson v. State, 476 So.2d 1195 (Miss. 1985), sets out the guidelines for determining whether the trial judge abused his discretion in denying a motion for change of venue. Mr. Burney has not met the standards of Johnson and its progeny. Therefore, we find no error in the trial court denying the motion for change of venue.

CONCLUSION
Finding no error, this Court affirms the verdict, judgment and sentence.
AFFIRMED.
ROY NOBLE LEE, C.J., and PRATHER, ROBERTSON, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.
SULLIVAN, J., and HAWKINS, P.J., dissent.
SULLIVAN, Justice, dissenting:
I concur with the majority opinion with the exception of assignment of error No. II combined with assignment of error No. III, dealing with the improper and unconstitutional closing arguments by the prosecutor and ineffective assistance of counsel, respectively.
The record discloses that the prosecutor in closing argument made at least twelve (12) specific remarks that were improper and prejudicial. The record also discloses that defense counsel made no objection throughout the closing argument, although he stated his objection in the motion for new trial. The majority is correct that our holding in Johnson v. State, 477 So.2d 196, 210 (Miss. 1985), forecloses the argument of these assignments on appeal.
However, in the next assignment of error, the majority would limit our scope of review of ineffective assistance claims when the trial judge has made "findings of fact." The majority reasons that the trial judge is better equipped than we are to make such findings and that we will not disturb his ruling where it is substantiated by the record. Gavin v. State, 473 So.2d 952 (Miss. 1985); Johnson v. State, 475 So.2d 1136 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984).
I respectfully dissent from this view. By limiting our scope of review the majority presupposes that effective assistance of counsel is merely a factual question. It is clear that "both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Strickland v. Washington, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674, 700 (1984). I believe this Court is perfectly capable of independently examining the record and resolving this mixed question of law and fact. The trial judge found that defense counsel was "very diligent", "very competent" and "able." The majority accepts these as "findings of fact." Of course, these are not specific "facts" about the attorney's performance during the defendant's trial, but are conclusory statements about the general ability and preparedness of the defendant's counsel. While the majority looks to the trial judge's findings to determine whether the defendant was effectively represented, it ignores its own finding that because of his attorney's failure to object, the defendant is now unable to obtain review of twelve (12) instances of error.
Applying the Strickland v. Washington test, this Court in Waldrop v. State, 506 So.2d 273 (Miss. 1987), stated:
Since the advent of the holding in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have ascribed to the two-prong analysis of ineffectiveness allegations fashioned by the United States Supreme Court. Thereby, there exists a two-fold inquiry into the issue of ineffective assistance of counsel, focusing on (1) whether counsel's performance was deficient, and if so, (2) whether the deficient performance was prejudicial to the defendant. See also, Alexander v. State, 503 So.2d 235, 240 (Miss. 1987); Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985); Lambert v. State, 462 So.2d 308, 316 (Miss. 1984); Thames v. State, 454 So.2d 486, 487 (Miss. 1984). Though there is a strong but rebuttable presumption that counsel's conduct falls within the wide range *1162 of reasonable professional assistance, Gilliard v. State, 462 So.2d 710, 714 (Miss. 1985), this Court must determine, based on the totality of the circumstances whether counsel's efforts were both deficient and prejudicial, thus necessitating a reversal. Read v. State, 430 So.2d 832, 839 (Miss. 1983). (Emphasis added).
Waldrop, 506 So.2d at 275.
When an ineffective assistance claim is raised on appeal this Court clearly has a duty to independently examine the record and determine whether the defendant received a fair trial regardless of whether the trial judge made "findings of fact" on the issue. Not only do we have a duty to conduct such an inquiry but the members of this Court are eminently qualified to do so. As Presiding Hawkins stated in Johnson v. State, 511 So.2d 1333 (Miss. 1987):
... [T]he members of this Court have each had years to observe trial practice and procedure in this State, and each is able to pass judgment by studying a record to determine whether or not a particular attorney was both competent and had a responsible attitute in its client's defense of a lawsuit in this State.
Indeed, by studying a trial record an appellate judge cannot escape forming an opinion on the performance of trial counsel.
Johnson v. State, 511 So.2d at 1340.
In the case at hand we are duty bound to conduct such an inquiry.
Counsel for Burney failed to object to twelve (12) improper and prejudicial remarks made during the closing argument by the prosecutor. The majority recognizes that trial counsel had a duty to make a contemporaneous objection to the argument and failed to do so. The prosecutor was allowed to impermissibly inflame the jury against Burney. It is untenable to assert that this was a legitimate trial strategy for any competent criminal defense attorney. See Waldrop, 506 So.2d at 276.
In Alexander v. State, 503 So.2d 235 (Miss. 1987), this Court stated:
In order to meet the second prong of the test  prejudice to the defense  the defendant must show "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Lambert v. State, 462 So.2d 308, 316-17 (Miss. 1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. 462 So.2d at 316-17.
Alexander, 503 So.2d at 240.
I would hold that Burney has met both prongs of the Strickland v. Washington test. By sitting idly while the prosecutor inflamed the jury with patently impermissible closing argument, trial counsel was ineffective. The magnitude of his ineffectiveness undermines confidence in the outcome of Burney's trial. It is inconceivable to me that the majority can cite twelve (12) instances of error by the prosecution and then declare that defense counsel "performed well."
I recognize that in many cases in the past this Court, even in capital cases, has sustained the procedural bar arguments made by the State of Mississippi and at the same time declined to find that trial counsel was ineffective. I have voted for this position many times but with increasing bewilderment. It seems to me paradoxical that claims can be raised in this Court which while meritorious are barred by trial counsel's failure to carry out his basic duties to the defendant and this Court can solemnly declare effective the defense counsel who repeatedly failed to raise the proper objections at the proper times. In my view to maintain this position is to do little more than envision a concept of fair trial through a glass, darkly.
I find no logic supporting any concept of judicial economy that would uphold a procedural bar, deny the ineffective assistance of counsel claim, and affirm this conviction only to rehash the entire matter again on a petition for post-conviction relief. It is my belief that when a record clearly shows ineffective assistance of counsel at trial this Court should address the matter on direct appeal. It appears almost axiomatic that the more often the attorney general requests this Court not to address assignments of error based on procedural bar, the *1163 more obvious it becomes that trial counsel did not render effective assistance.
On the strength of Strickland v. Washington, and its Mississippi progeny, I would reverse and remand this cause for a new trial.
HAWKINS, P.J., joins this dissent.