# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-00954-SCT

*CHARLOTTE PITTS a/k/a CHARLOTTE HENSLEY PITTS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/15/96 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/7/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Charlotte Pitts appeals the October 15, 1996 order of the Coahoma County Circuit Court placing her in the custody of the Mississippi Department of Corrections after a jury found her guilty of two counts of kidnapping. Finding that there is no merit to her contention that the comments and conduct of the circuit court resulted in an unfair trial, we affirm her conviction and sentence.

I.

¶2. Alicia and Robert "Duke" Pitts are the minor children of Charlotte Hensley Pitts. The children were placed in the custody of the Mississippi Department of Human Services pursuant to an October 12, 1995 order of the Coahoma County Youth Court, adjudicating them "neglected/abused."[1] Duke, two-and-one half years old at the time of these proceedings, apparently had been severely beaten by Pitts' boyfriend, Kelly Bishop. On January 31, 1996, Pitts' mother, Betty Hensley, was awarded custody of Duke. Alicia remained in DHS custody but in "relative placement" with Hensley.[2]

¶3. In April, 1996, after Pitts returned to Clarksdale from Dallas, where she had been living,

Department of Human Services social worker, Vidale Washington, authorized an arrangement whereby Pitts was permitted to live with her mother and help take care of the children. She was not allowed to remove them from the house without supervision.

¶4. Hensley left for a workers' compensation hearing in Oklahoma on Sunday, April 28, 1996, with plans to return on Tuesday evening, April 30. Pitts was to take care of the children and Hensley's brother-in-law, the children's great uncle and neighbor, was checking in with them to make sure that everything was all right and that they had what they needed, since Pitts had no car. Late Monday night, he went over to the house to check on them, stating "I looked through the window because I couldn't get nobody to the door and it was some quilts and pillows and stuff laying in the floor and I thought they were asleep because the TV was on in the living room and the kitchen light was on . . . ." However, on Tuesday morning, when he went to pick Alicia up to take her to school, the TV was still on, the back door was ajar and the house was empty. He immediately notified DHS that Alicia and Duke were missing.

¶5. Alicia Pitts testified that Kelly [Bishop] picked up her, her mother and her brother in a truck parked in an alley. Her mother had told her that they were going for a walk. She testified that she did not want to get into the truck and tried to get away from her mother when she saw Bishop. When they got in the truck, her little brother started shaking ,but didn't say anything. Alicia indicated that her clothes were already in the truck. They went first to Tulsa, Oklahoma and then to Branson, Missouri. She testified that she wasn't allowed to use the telephone to call her grandmother.

¶6. On May 25, 1996, the Branson, Missouri police called Hensley at work. Hensley and Alton Bruce retrieved the children from Branson the next day.

¶7. Pitts, along with Robert Kelly Bishop, was indicted[3] on June 10, 1996 by a grand jury of the Coahoma County Circuit Court for the kidnapping of her children, Alisha [sic] and Robert Pitts, from the custody of their grandmother, Betty Hensley. She entered a plea of not guilty to both counts of the indictment. A jury of the Coahoma County Circuit Court found her guilty as charged. The circuit court denied her motion for a new trial, or, in the alternative, for acquittal notwithstanding the verdict on August 21, 1996. On October 15, 1996, after a Presentence Investigation Report had been conducted, the circuit court entered an order sentencing her to serve an eight-year sentence for each of the two kidnapping charges. He ordered the sentences to be served concurrently, with six years suspended, subject to conditions specified by the court, after two years are served. The MDOC was directed to provide Pitts with treatment and rehabilitation for alcohol and/or drug abuse.

II.

¶8. Although not expressly stated in the record, Pitts' defense to the kidnapping charges appears to be that she didn't know that she couldn't take her children from her mother's house without supervision.[4] Pitts primarily contends that the circuit court erred in referring to the orders placing Robert "Duke" Pitts in the custody of the Department of Human Services, and then, in his grandmother's custody as "two *lawful* orders of the Youth Court of Coahoma County, Mississippi." She asserts that this was an improper comment on the weight of the evidence that was prejudicial to her case.

¶9. In *Weaver v. State*, 497 So. 2d 1089 (Miss. 1986), this Court stated, "[t]he traditional view in

this state that a trial judge should not comment upon the weight of the evidence has by no means been discarded, although it is not a prohibition enforced strictly and mechanically as perhaps was once the case." *Weaver,* 497 So. 2d at 1094 (citations omitted). In that case, when overruling defense counsel's objection to the use of the word "burglary" in a question put to a witness whose testimony allegedly had not yet revealed that a burglary had occurred, the trial judge stated, "There was a burglary in his testimony in Maben, Mississippi. There's been a lot of testimony about it." *Id.* at 1093. We found that the comment was "within the scope of those the trial judge was privileged to make." *Id.* at 1094.

¶10. Likewise, we do not think that the trial judge exceeded the scope of his privilege referring to two orders of the Coahoma County Youth Court as "lawful orders" of that court. There is a presumption that orders and judgments of the lower courts are correct. *Artis v. State,* 643 So. 2d 533, 535 (Miss. 1994); *Clark v. State,* 503 So. 2d 277, 280 (Miss. 1987). *See also Walker v. Jones County Community Hosp.,* 253 So. 2d 385, 385(Miss. 1971)("We indulge the presumption that the judgment below was correct."). Thus, we do not construe the circuit court's mention of "lawful orders" as a comment on the weight of the evidence; rather, it is well within the scope of comments a judge is entitled to make.

## III.

¶11. In her Summary of the Argument, Pitts further contends that she was prejudiced by the circuit court's threat to hold her attorney in contempt of court. While she does not develop the argument any further in the body of her brief, she quotes extensively from *Waldrop v. State,* 506 So. 2d 273 (Miss. 1987), where this Court addressed the effect upon the jury of when "the judge 'lost his cool', and advised defense counsel that he was going to spend some time as a guest of the county government." *Waldrop,* 506 So. 2d at 276. While the Court was sympathetic with the lower court judge's outburst, it nonetheless noted its disapproval of such conduct in the presence of the jury. *Id.* As distinguished from *Waldrop*, however, the record in the case *sub judice* indicates that the circuit court's comment clearly was made at the bench and not within the hearing of the jury. Further, "'counsel may not complain of slight or not seriously prejudicial impropriety in remarks or comments by the court where they are provoked by himself." *Young v. State,* 679 So. 2d 198, 204 (Miss. 1996)(quoting *Parker v. State,* 401 So. 2d 1282, 1285 (Miss. 1981)). It was only after admonishing Pitts' attorney to answer his question and not to argue with him that the circuit court stated, "Let's go back in chambers. I'll hold you in contempt with that attitude." Because the remark was made outside the hearing of the jury and was provoked by the attorney's behavior, the jury certainly was not prejudiced by the judge's comment.

## IV.

¶12. Pitts further argues that the circuit court erred in excluding evidence of whether she received notice of the Youth Court proceedings that resulted in her children's placement in the custody of the Department of Human Services and their grandmother. As part of her defense that she couldn't kidnap her own children, Pitts asserts that the dispositional orders of the Youth Court are invalid because she didn't receive notice of the proceedings. The record indicates that this matter was addressed in some unspecified pre-trial ruling. Pre-trial motions on behalf of the defendant were not designated for appeal and thus, are not included in the transcript for review by this Court nor do the

Clerk's Papers include copies of any pre-trial motions made on Pitts' behalf. The burden is on the defendant to make a proper record of the proceedings. *Jackson v. State,* 689 So. 2d 760, 764 (Miss. 1997); *Russell v. State,* 670 So. 2d 816, 822 n.1 (Miss. 1995); *Lambert v. State,* 574 So. 2d 573, 577 (Miss. 1990). This Court "cannot decide an issue based on assertions in the briefs alone; rather, issues must be proven by the record." *Medina v. State,* 688 So. 2d 727, 732 (Miss. 1996); *Robinson v. State,* 662 So. 2d 1100, 1104 (Miss. 1995). Accordingly, the matter is not properly before this Court.

V.

¶13. We find no merit in Pitts' claims that she was prejudiced by the comments and actions of the circuit court. The judge's reference to "lawful orders" of the Youth Court was well within his discretion since there is a presumption that court orders are valid. The judge's admonitions to Pitts' attorney were not made within the hearing of the jury and apparently were provoked by the attorney, himself. Finally, Pitts has not provided this Court with a sufficient record to support her claim that the circuit court erred in not admitting evidence of whether she had received notice of the Youth Court proceedings. Accordingly, we affirm the decision of the circuit court.

¶14. **COUNT I: CONVICTION OF KIDNAPPING AND SENTENCE OF EIGHT (8) YEARS WITH SIX (6) YEARS SUSPENDED AFTER HAVING SERVED TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. COUNT II: CONVICTION OF KIDNAPPING AND SENTENCE OF EIGHT (8) YEARS WITH SIX (6) YEARS SUSPENDED AFTER SERVING TWO (2) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENT TO SENTENCE IN COUNT I.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. A verbal order was given by the Court on September 2, 1995 to get the children into DHS custody pending a September 6, 1995 shelter hearing.

2. Alicia, born June 2, 1987, previously had been in her mother's custody pursuant to a divorce decree entered by the District Court in and for Tulsa County, Oklahoma on December 2, 1991. Her father, Alan Mart Pitts, apparently neither had paid child support nor exercised his visitation rights. Duke, whose father's identity is not revealed in the record, was born January 31, 1993.

3. The indictment ultimately was amended to delete the name of Pitts' boyfriend.

4. Opening and closing arguments were not transcribed or made part of the record. Pitts based her motion to quash the indictment on her assertion that "a mother can't kidnap her own children." In her brief, she states, "The entire defense was predicated on her not receiving Notice of the hearings as well as the subsequent Notices of said Orders."