# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-01591-SCT

*JOSEPH ROBERT REITH a/k/a JOSEPH R.*
*REITH a/k/a JOSEPH REITH*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2011 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 04/10/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Following a jury trial in the Circuit Court of Madison County, Mississippi, Joseph Robert Reith was convicted for the murder of his ex-wife and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. Reith appealed, and his conviction and sentence were affirmed by the Mississippi Court of Appeals. ***Reith v. State***, __ So. 3d __, 2013 WL 1122311 (Miss. Ct. App. Mar. 19, 2013). Following that court's

denial of his motion for rehearing, Reith filed a petition for writ of certiorari, which this Court granted.

## FACTS

¶2. For purposes of certiorari review, we adopt the following facts from the Court of Appeals' opinion.

> Reith and his wife, Tammy, divorced in 2007. The couple shared custody of their only child, Dylan. Following the divorce, Tammy voiced her intent to move to Alaska and to take Dylan with her. On March 12, 2010, Reith petitioned the chancery court for a temporary restraining order and a permanent injunction to prevent Tammy from removing Dylan from the state.
>
> On March 23, 2010, Tammy allegedly went to Reith's apartment to visit with Dylan. However, Dylan was not home. While inside the apartment, Reith and Tammy began to argue about Tammy threatening to take Dylan to Alaska. Reith later killed Tammy as she attempted to leave his apartment. Reith admitted that he killed Tammy but insisted that he "blacked out" before killing her.

*Reith*, 2013 WL 1122311, at *1.

## ISSUES

¶3. On writ of certiorari, Reith raises the following issues, restated as follows:

    **I.    The trial court's error in granting instruction S-5 was not harmless.**

    **II.    Ineffective assistance of counsel regarding instruction S-5**.

As issue I is dispositive, we will address only that issue.

## ANALYSIS

¶4. This Court applies an abuse-of-discretion standard to jury instructions. *Williams v. State*, 111 So. 3d 620, 623 (Miss. 2013). "The instructions are to be read together as a whole,

2

with no one instruction to be read alone or taken out of context." ***Bailey v. State***, 78 So. 3d 308, 315 (Miss. 2012) (quoting ***Young v. State***, 891 So. 2d 813, 819 (Miss. 2005)). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." ***Bailey***, 78 So. 3d at 315 (citing ***Newell v. State***, 49 So. 3d 66, 73 (Miss. 2010)).

**The trial court's error in granting instruction S-5 was not harmless.**

¶5. Reith argues that instruction S-5 was given in error. S-5 read, in pertinent part,

Deliberate design may be presumed from the unlawful and deliberate use of a deadly weapon.

¶6. "Instructions in forms similar to [S-5] have been before the Court for many years and a long line of cases have discussed such instructions." ***Tran v. State***, 681 So. 2d 514, 517 (Miss. 1996). The Court has "consistently held such an instruction erroneous[,]" but the rationale espoused in those cases left open the opportunity to request such an instruction. ***Id***. Today, we clarify and foreclose its future use, for "due process requires that the State prove each element of the offense beyond a reasonable doubt" and instructions which allow the jury to presume guilt on an essential element of an offense run counter to our most basic tenet of criminal law. ***Neal v. State***, 451 So. 2d 743, 757 (Miss. 1984).

¶7. Throughout a criminal prosecution, there is only one presumption as to the defendant – "[t]he presumption of innocence – that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" ***In re Winship***, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970) (quoting ***Coffin v.***

3

*United States*, 156 U.S. 432, 453, 15 S. Ct. 394, 39 L. Ed. 481 (1895)). The "presumption of innocence . . . extends to every element of the crime." *Morissette v. United States*, 342 U.S. 246, 275, 72 S. Ct. 240, 96 L. Ed. 288 (1952). The crime with which Reith was charged in this case was deliberate-design murder. "'Deliberate design connotes an intent to kill . . . .' Thus, 'intent' was an essential element of the crime upon which" Reith was presumed innocent and "the State was required to prove [his] guilt beyond a reasonable doubt." *Williams*, 111 So. 3d at 623 (quoting *Brown v. State*, 965 So. 2d 1023, 1030 (Miss. 2007)).

¶8.     As intent is an essential element of deliberate-design murder, "its existence is a question of fact which must be submitted to the jury." *Morissette*, 342 U.S. at 274. "It follows that the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from *an act*." *Id*. (emphasis added). S-5 did just that – it told the jury that it may presume intent from the use of a deadly weapon, *i.e.*, "an act." Allowing the jury to "assume intent from an isolated fact . . . prejudge[s] a conclusion which the jury should reach of its own volition." *Id*. at 275. As such, S-5 is in hopeless "conflict with the overriding presumption of innocence with which the law endows the accused . . . ." *Id*.

¶9.     Our prior cases have not addressed this conflict. In *Tran*, this Court examined a jury instruction which contained the exact language of S-5. The *Tran* Court stated "that an instruction on an asserted presumption of malice[1] from the use of a deadly weapon is proper only where the testimony has failed to establish the circumstances of the use of the weapon."

---

[1] *See Tran*, 681 So. 2d at 517 (quoting *Blanks v. State*, 542 So. 2d 222, 227 (Miss.1989)) (internal citations omitted) ("Definitionally, we regard malice aforethought and deliberate design as synonymous.").

4

*Tran*, 681 So. 2d at 517 (quoting *Stewart v. State*, 226 So. 2d 911, 912 (Miss. 1969)). The Court held the instruction in error because eyewitness testimony established "the facts of the shooting[,]" and because the instruction "relieved the prosecution of its [burden of] persuasion." *Tran*, 681 So. 2d at 518.

¶10.   Relying on *Tran* in the case *sub judice*, the Court of Appeals held that, "even though deliberate design may be presumed from the unlawful and deliberate use of a deadly weapon, . . . the circumstances surrounding the use of the weapon were established"; thus, "the jury should not have been instructed that deliberate design could be presumed from the use of the deadly weapon." *Reith*, 2013 WL 1122311, at **3, 4. We agree that the instruction should not have been given. However, we must depart from our prior cases and hold that a jury may never be instructed that it may presume deliberate design from the unlawful and deliberate use of a deadly weapon, even "where the testimony has failed to establish the circumstances of the use of the weapon." *Tran*, 681 So. 2d at 517.

¶11.   Recently, in *Williams*, we addressed the use of presumptive instructions regarding an element of the charged offense. Like Reith, "Williams was indicted for deliberate design murder." *Williams*, 111 So. 3d at 623. "Williams admit[ted] that she shot and killed" the victim. *Id*. at 624. "Her defense at trial was that the shooting was an accident, and, therefore, she lacked the requisite intent to be found guilty of deliberate design murder." *Id*. Williams's jury was instructed, in pertinent part:

> [A] person is *presumed* to have intended the natural and probable consequences of his voluntary and deliberate acts. (Instruction S-4.)

*Id*. at 623 (emphasis in original). As Williams did not deny shooting the victim, she argued that this instruction "shifted the burden of proof on the only contested issue at trial, *her intent*, *vel non*." *Id*. at 624. (emphasis in original). We agreed. "As a presumption is accepted as true without proof to the contrary," we held that instruction S-4 ("[a] person is presumed to intend . . . .") impermissibly shifted "the burden to [Williams] to provide proof[]" that she lacked intent. *Id*. at 625.

¶12.　In the case *sub judice*, Reith did not deny that he killed his ex-wife with a dangerous weapon. Essentially, S-5 told the jury that it could assume Reith intended to kill her, thus relieving the State of its burden to prove Reith's guilt on an essential element of the crime. Just like S-4 in ***Williams***, S-5 allowed the jury to "convict[] [Reith] based upon a presumption as opposed to evidence beyond a reasonable doubt." ***Williams***, 111 So. 3d at 626.

*Harmless Error*

¶13.　The Court of Appeals concluded that any error in granting S-5 was harmless "in light of the overwhelming evidence against Reith and the other jury instructions[.]" ***Reith***, 2013 WL 1122311, at *4. We disagree.

¶14.　Regarding the "other jury instructions[,]" the Court of Appeals stated:

> The last paragraph of instruction S-1A informed the jury that the State must prove every element of either crime beyond a reasonable doubt before the jury could find Reith guilty. We find that, despite the language in instruction S-5, the jury was fully and fairly instructed of the State's burden in proving Reith's guilt.

*Id*. In ***Williams***, the State argued that the jury separately was instructed that Williams "was 'presumed . . . innocent' and that the 'State must prove beyond a reasonable doubt' that [she] was 'guilty of every material element of the offense.'" ***Williams***, 111 So. 3d at 624. We rejected that contention, for "these general instructions as to the [State's] burden and the defendant's presumption of innocence do not dissipate the error in the challenged portion of the instructions." *Id*. at 625 (quoting ***Francis v. Franklin***, 471 U.S. 307, 319-20, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985)). Based on our analysis *supra*, not only does a general instruction on the presumption of innocence not "dissipate the error" in S-5, the instructions are in hopeless conflict.

¶15.    The Court of Appeals also found that "the State presented overwhelming evidence from which the jury could *infer* that Reith . . . intended to kill [his ex-wife]." ***Reith***, 2013 WL 1122311, at *4. In ***Williams***, we noted that "[u]ndoubtedly, the State presented substantial evidence of Williams's guilt." ***Williams***, 111 So. 3d at 626. However,

> [h]er testimony was sufficient to warrant an instruction on accident or mistake, which was granted. Once her defense was placed in issue and the instruction given, it was the duty of the jury to consider Williams's testimony and defense among all the other evidence presented. It was S-4 which created this dilemma, for it is impossible to determine beyond a reasonable doubt whether the jury engaged in this consideration or merely relied on S-4's presumption as to intent.

*Id*. We agree that considerable evidence existed by which the jury could have inferred deliberate design on the part of Reith, but a presumption (assumption) based on that evidence is erroneous. The evidence presented also was sufficient to warrant a heat-of-passion manslaughter instruction, which was granted. ***Reith***, 2013 WL 1122311, at *4. "Once

7

[Reith's] defense was placed in issue and the [manslaughter] instruction given, it was the duty of the jury to consider [his] . . . defense among all the other evidence presented." *Williams*, 111 So. 3d at 626. Just as in *Williams*, we find it "impossible to determine beyond a reasonable doubt whether the jury engaged in this consideration or merely relied on [S-5's] presumption as to intent." *Id*. Thus, we cannot conclude that the error in granting S-5 was harmless beyond a reasonable doubt.

## CONCLUSION

¶16.    The circuit court erred in granting instruction S-5, and we cannot conclude that such error was harmless. Deliberate design may not be presumed, and we overrule our prior cases to the extent that they conflict with this principle. We admonish the circuit courts not to grant an instruction which relies upon a presumption of intent, as it conflicts with the presumption of innocence, relieving the State of its burden to prove guilt beyond a reasonable doubt on an essential element of the offense. Reith's conviction and sentence in the trial court and the judgment of the Court of Appeals are reversed, and this case is remanded to the Circuit Court of Madison County for a new trial consistent with this opinion.

¶17.    **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**