# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00070-COA

| | |
|---|---|
| **JEFFERY JOHNSON A/K/A JEFFREY JOHNSON A/K/A JEFF JOHNSON A/K/A BULLET** | **APPELLANT** |

**v.**

| | |
|---|---|
| **STATE OF MISSISSIPPI** | **APPELLEE** |

| | |
|---|---|
| DATE OF JUDGMENT: | 10/30/2014 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS JR. |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES BRUCE BROWN |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH JASON L. DAVIS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF POSSESSION OF AT LEAST TEN BUT LESS THAN THIRTY GRAMS OF MARIJUANA WITH THE INTENT TO DISTRIBUTE AND SENTENCED AS A HABITUAL OFFENDER AND SUBSEQUENT DRUG OFFENDER TO SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, AND TO PAY A $500 FINE |
| DISPOSITION: | AFFIRMED - 06/14/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     On October 30, 2014, Jeffrey Johnson was convicted of possession of marijuana in

an amount more than ten grams but less than thirty grams with the intent to distribute, and was sentenced as a habitual offender to six years' imprisonment and fined $500. Johnson appealed his conviction to this Court. Finding no error, we affirm.

## FACTS AND PROCEEDINGS BELOW

¶2.     In 1987, Johnson was convicted of felony burglary.[1] In 1997, Johnson was convicted of a second felony, possession of cocaine, and sentenced to two years' imprisonment. In 2004, after being convicted of a third felony, possession of cocaine in an amount greater than ten grams but less than thirty grams, Johnson was sentenced to fifteen years' imprisonment.

¶3.     On November 29, 2012, Starkville Police Department Officer Derek Nelson observed Johnson apparently driving without a seatbelt. After stopping Johnson, Nelson observed that Johnson's seatbelt was buckled around his waste, but that the seatbelt strap was tucked underneath his shoulder. Upon asking Johnson for his driver's license and insurance, Nelson noticed a light smell of marijuana emanating from the vehicle. Nelson asked Johnson to step out of his car and interviewed Johnson. Nelson then called Joe Huffman, Johnson's probation officer, to assist.

¶4.     When Huffman arrived, he also smelled marijuana coming from the car. Huffman immediately put Johnson in handcuffs, taking him into custody. Johnson admitted to Huffman that Johnson had marijuana in the console of his vehicle. Huffman searched the vehicle and discovered a plastic bag containing 29.6 grams of marijuana. Johnson admitted

---

[1] The record is silent as to the exact sentence for this conviction. However, sentencing did not need to be established because Johnson's felony burglary conviction was not one of the convictions cited for the habitual-offender sentence enhancement.

to Huffman, Nelson, and Sergeant George Coleman of the Starkville Police Department that the marijuana was "for the women." Upon further search of the vehicle, Huffman discovered boxes of sandwich bags and condoms in the trunk.

¶5.     Johnson was originally indicted on August 5, 2013, for possession of marijuana in an amount less than thirty grams with the intent to distribute, in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2013). More than three weeks before trial on August 4, 2014, the State filed a motion to amend the indictment, charging Johnson as a habitual offender, pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015), and also as a second or subsequent drug offender, pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2013). The trial court held a hearing on the State's motion and granted it. During the same week, the State informed Johnson's attorney of possible sale-of-cocaine charges being considered by the grand jury against Johnson. Johnson's trial commenced on October 28, 2014.

¶6.     At trial, Huffman testified that, based on this and his experience, in his opinion, Johnson intended to take the marijuana, break it down into smaller amounts, and trade it for sexual encounters. Further, Johnson testified that he was headed to a friend's house to watch football, that he expected fifteen to twenty people to be there, that everyone shares what they bring, and that if someone wanted some of his marijuana they could have it. The court denied proposed defense jury instructions D-5 and D-6 concerning witness testimony. On October 30, 2014, the jury found Johnson guilty of possession of marijuana in an amount less than thirty grams with intent to distribute. As a result of his habitual- and subsequent-offender

3

status, the trial court sentenced him to six years' incarceration, to be served day-for-day, without the possibility of parole, earned or early release, or weekend passes. Following the jury's guilty verdict and the trial court's sentencing, Johnson filed a motion for a directed verdict and, alternatively, a judgment notwithstanding the verdict (JNOV). The circuit court denied his motion. Johnson now appeals to this Court. We affirm.

## DISCUSSION

¶7. Johnson argues that the State did not prove his intent to distribute, that there was an improper jury instruction, that the circuit court erred in not allowing him to "fully" cross-examine Nelson, that the amending of the indictment was improper, that his attorney provided ineffective assistance of counsel, and that plain error occurred. Johnson later filed an amended brief in which he asserts further ineffective-assistance-of-counsel claims for his counsel's failure to object to testimony and not wanting to go to trial. He also claims that the trial judge should have recused himself, and that Johnson was wrongly denied post-conviction bail.

### I. Intent to Distribute

¶8. Johnson argues that his conviction for possession of marijuana in an amount less than thirty grams with the intent to distribute was against the weight and sufficiency of the evidence because the State failed to prove the intent-to-distribute element of his charge. To support his argument he asserts that no rational trier of fact could have found intent to distribute and that the State "used conjecture to imply that [he] was going to share the marijuana."

4

## A.    Sufficiency of the Evidence

¶9.    "The standard of review for the denial of a motion for directed verdict and JNOV is the same." *Parks v. State*, 884 So. 2d 738, 743 (¶15) (Miss. 2004). "[D]irected verdict and JNOV [motions] both challenge the legal sufficiency of the evidence presented at trial." *Id*. The Court "considers all of the evidence in the light most favorable to the State and gives the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*. The critical inquiry in addressing a challenge to the sufficiency of the evidence "is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (quoting *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)). The Court must reverse if the facts, viewed in that light, are so overwhelmingly in favor of the appellant that reasonable minds could not have arrived at a guilty verdict. *Parks*, 884 So. 2d at 744 (¶15). The Court must affirm when there is substantial evidence in support of the verdict of such quality and weight that reasonable and fair-minded jurors exercising impartial judgment might have reached different conclusions. *Id*.

¶10.    A "transfer" under the statute for the delivery and transfer of narcotics is a change of

possession from one person to another. *White v. State*, 842 So. 2d 565, 576 (¶32) (Miss. 2003). To establish the defendant's intent to transfer within the meaning of the statute, all that is required is proof of the defendant's intent to relinquish possession and control. *Id*. The purpose of the statute is to thwart the exchange or transfer of the substance regardless of whether there was consideration for it. *Id*.

¶11.   Johnson testified that he possessed marijuana, that he purchased it for himself and others, that he was on his way to a party to get high, that he was bringing the marijuana with him to the party, that everyone would share what they brought to the party, and that he would share his marijuana with others if they wanted it. Johnson's admission that he was bringing marijuana to a party fully aware that he would be "sharing" whatever he brought is sufficient to prove his intent to distribute. Viewed in the light most favorable to the State, we find that there is sufficient evidence to support the jury's verdict. Therefore, we find Johnson's claim is without merit.

### B.      Weight of the Evidence

¶12.   When reviewing a claim that a conviction is against the weight of the evidence, this Court will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Bush*, 895 So. 2d at 844 (¶18) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). A reversal on the grounds that the verdict was against the overwhelming weight of the evidence means that, "as the thirteenth juror, the court simply disagrees with the jury's resolution of the conflicting testimony." *Id*. (citing *McQueen v. State*, 423 So. 2d 800, 803 (Miss. 1982)). "[The]

6

difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves." *Id*. "Instead the proper remedy is to grant a new trial." *Id*.

¶13.    At trial, Johnson testified that he purchased the marijuana in preparation for going to a gathering where everyone would share what they brought. Coleman, Huffman, and Nelson testified that Johnson said that the marijuana was "for the women." Further, Nelson and Huffman testified that, based on their experience, the condoms and sandwich bags, as well as the amount of marijuana found, were strong indicators that Johnson intended to trade the marijuana for sexual encounters. We do not see any indication that the trial court abused its discretion in denying Johnson's request for a new trial. We find that this claim is without merit.

## II.    Jury Instructions

¶14.    Johnson argues that the jury instructions did not correctly state the law, whereas his instructions D-5 and D-6 did. The Court applies an abuse-of-discretion standard to jury instructions. *Reith v.* State, 135 So. 3d 862, 864 (¶4) (Miss. 2014). Jury instructions are read as a whole, with no one instruction being read alone or taken out of context. *Id*. at 865 (¶4). "When read together, if the jury instructions fairly state the law of the case and create no injustice, then no reversible error will be found." *Id*.

### A.    Instruction D-5

¶15.    Johnson argues instruction D-5 was a correct statement of law, not fully covered by the other instructions, and was identical to an instruction given in an unrelated case.[2]

_____

[2] Instruction D-5 states:

¶16.   At trial, the State objected to instruction D-5 as improper. Specifically, the State took issue with "the part about how a witness might be affected by the verdict." The State asserted it was an improper instruction given that Johnson testified at trial, as well as repetitious in light of the circuit court's instructions. Johnson even acknowledged that his testifying at trial "kind of changes [the] instruction a little bit." In weighing the instruction, the circuit court could only recall giving such an instruction when there was a codefendant who testified. For those reasons, the circuit court refused the instruction.

¶17.   We find that the circuit court's instructions adequately addressed the weighing of testimony, and that instruction D-5 was adequately covered by the court's instructions. We find that refusing the instruction was not an abuse of discretion and, therefore, we affirm the circuit court's decision. We find that this claim is without merit.

_____

Each person testifying under oath is a witness. You have the duty to determine the believability of the witnesses. In performing this duty, you must consider each witness'[s] sincerity, and the witness'[s] demeanor while testifying. You must consider also the extent the witness is either supported or contradicted by other evidence; the relationship the witness may have with either side; and how the witness might be affected by the verdict. You must consider any evidence of the witness'[s] character for truthfulness.

In weighing a discrepancy by a witness or between witness[es], you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail.

You may reject or accept all or any part of a witness'[s] testimony and you may reject any part and accept other parts of a witness'[s] testimony.

After making your own judgment, you will give the testimony of each witness the credibility, if any, you think it deserves.

The weight of the evidence is not necessarily determined by the number of witnesses testifying as to the existence or nonexistence of any fact. You may find that the testimony of a smaller number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

### B. Instruction D-6

¶18. Johnson also argues that the circuit court's refusal to include his instruction D-6 was in error.[3] He argues that it is not an improper comment on the testimony of a witness to instruct the jury regarding the proper effect to give to prior inconsistent statements by witnesses testifying at trial. Further, Johnson argues that instruction D-6 was appropriate because the officers gave prior inconsistent statements and because the State alleged that defense witness Ryan Johnson gave prior inconsistent statements.

¶19. At trial, the State objected to instruction D-6 as unnecessary and repetitious in light of the court's instructions, and the court noted that it believed there were no inconsistent statements made. The court refused instruction D-6 for those reasons. We find that the circuit court's instructions adequately instructed the jury on any testimony perceived as inconsistent, and that instruction D-6 was covered by the court's instructions. Further, we find that refusing the instruction was not an abuse of discretion. We find this claim is without merit.

### III. Cross-Examination

¶20. Johnson argues he was not allowed to "fully" cross-examine Nelson because he was not allowed to question him regarding an unrelated traffic stop during which Nelson allegedly turned off his microphone. "Limitations on cross-examinations are reviewed for abuse of discretion." *Anthony v. State*, 108 So. 3d 394, 397 (¶5) (Miss. 2013). The Court will "affirm the trial court's exercise of discretion unless the ruling resulted in prejudice to the

---

[3] Instruction D-6 stated: "You have heard evidence that some of the witnesses in the case made statements prior to trial that may be inconsistent with their testimony during this trial. If you believe that an inconsistent statement was made, you may consider the inconsistency in evaluating the believability of the witness'[s] testimony."

accused." *Id*. Mississippi law allows for "wide-open cross-examination so long as the matter probed is relevant." *Cage v. State*, 149 So. 3d 1038, 1044 (¶14) (Miss. 2014) (citing M.R.E. 611(b)). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. Evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues or considerations such as that introducing the evidence would be a waste of time. M.R.E. 403.

¶21.    Johnson sought to impeach Nelson's credibility by questioning him about an unrelated traffic stop in which Nelson was involved. There was an accusation that Nelson had turned off his microphone during the stop. There was no internal investigation, no reprimand, no report, nor any formal charge brought against Nelson stemming from the stop. The trial judge determined that allowing the questioning would have caused more harm than good, so he excluded the questioning. Specifically, the judge said that the questioning would only confuse the jury about an unrelated traffic stop and the purpose of the trial. There was no issue raised with Nelson's stop of Johnson nor a motion to challenge the stop. Nelson's testimony about the stop was corroborated by others at trial. We find no error in the circuit court's decision to not allow the line of questioning. Therefore, we find Johnson's claim is without merit.

### IV.    Amended Indictment

¶22.    Johnson argues that the amending of the indictment was improper because he had insufficient notice of the hearing at which the motion was filed and because the filing of the

10

motion to amend the indictment, the hearing on the motion, and the issuing of the order granting the motion all happened on the same day.

¶23.    The circuit court's decision to allow an amendment to an indictment is a question of law that we review de novo. *Williams v. State*, 131 So. 3d 1174, 1176-77 (¶6) (Miss. 2014). Amendment to an indictment shall be allowed only when "the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised." URCCC 7.09. "Adequate notice is achieved through formal pleadings which include the specific amendment to be offered and which are filed sufficiently in advance of trial." *Ferguson v. State*, 136 So. 3d 421, 423 (¶11) (Miss. 2014) (quoting *Boyd v. State*, 113 So. 3d 1252, 1256 (¶12) (Miss. 2013)). Failing to object to an amendment to an indictment is a procedural bar to consideration of the issue on appeal. *Newberry v. State*, 85 So. 3d 884, 888 (¶8) (Miss. Ct. App. 2011). When a defendant does not ask for a continuance in response to the amending of an indictment, he cannot later object that he was surprised and prejudiced in his defense. *Nathan v. State*, 552 So. 2d 99, 107 (Miss. 1989).

¶24.    Johnson neither objected to the amending of the indictment nor asked for a continuance. In fact, Johnson's only substantive contribution during the hearing was to correct a clerical error in one of the sentencing orders for his prior felony convictions. In doing so, he waived his ability to appeal the amending of the indictment.  Nowhere in the record did Johnson allege that he was not convicted of those felonies. Further, Johnson had personal knowledge of the prior felonies for which he was convicted. His claim that he was given insufficient notice is procedurally barred.

11

¶25. Notwithstanding the procedural bar, the only critical timing issue with regard to adequate notice of amending an indictment is the time between the filing of the amendment and the start of trial. *Ferguson*, 136 So. 3d at 423 (¶11). Here, the amendment was filed more than two months before the start of trial. The Mississippi Supreme Court has held that notice is sufficient as few as three days prior to the start of trial. *Williams*, 131 So. 3d at 1177-78 (¶9). Likewise, *Williams* took no issue with the fact that the defendant learned of the State's intent to amend the indictment the same day that the motion to amend was filed. *Id.* at 1176-78 (¶¶2, 9).

¶26. The circumstances surrounding the sentence enhancement at issue here are in stark contrast to those in *Sallie v. State*, 155 So. 3d 760 (Miss. 2015), where the court reversed based on insufficient notice. In *Sallie*, the indictment did not indicate that the State would seek any sentence enhancement, the State did not indicate pretrial that it would seek it, and it was only after the jury convicted the defendant that the defendant received any indication that the trial court might consider the enhancement at sentencing. *Id.* at 763 (¶9). We find that the amendment to the indictment for Johnson was made sufficiently in advance of trial. Therefore, we find Johnson's claim is without merit.

## V. Ineffective Assistance of Counsel

¶27. Johnson argues ineffective assistance of counsel because the circuit court admonished his counsel, because his counsel failed to raise the issue of probable cause for the stop of his vehicle, and because his counsel should have asked for a continuance after allegations of five new charges were made. Johnson submitted an amended brief in which he included further

assertions of ineffective assistance of counsel based on trial counsel urging him not to go to trial, not objecting to Nelson and Huffman's testimony about the sandwich bags found in Johnson's trunk, not objecting to Officer Coleman's testimony because he was not listed as a State witness, and not objecting to Huffman's testimony about condoms in Johnson's car.

¶28.    When an ineffective-assistance claim is raised on direct appeal, *Read v*. State, 430 So. 2d 832, 841 (Miss. 1983), "requires that the inquiry . . . be confined strictly to the record." *Colenburg v. State*, 735 So. 2d 1099, 1102 (¶6) (Miss. Ct. App. 1999). Successfully claiming ineffective assistance of counsel requires proving counsel's performance was deficient, and that the outcome of trial would have been different but for the deficiency. *Leatherwood v. State*, 473 So. 2d 964, 968 (Miss. 1985) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The burden of proof rests with Johnson to prove both prongs. *Id*. There is a strong presumption that counsel's performance falls within the range of reasonable professional assistance. *Id*.

### A.    Admonishment of Trial Counsel

¶29.    Johnson complains that his counsel was rendered ineffective by the circuit court's admonishing him outside the presence of the jury for questioning Nelson about a prior, unrelated traffic stop. When an admonishment provoked by the attorney's behavior is made outside the hearing of the jury, the jury is not prejudiced by the court's comments. *Pitts v. State*, 711 So. 2d 864, 866 (¶11) (Miss. 1998).

¶30.    Counsel's questioning about an unrelated traffic stop spurred the court to tell counsel that he should approach the bench so that relevancy could be determined before beginning

such questioning. But the court waited until after the jury had left the courtroom to say anything else to Johnson's counsel. The Mississippi Supreme Court has held that such comments do not prejudice the jury. *See id*. We find the circuit court's handling of this issue was not an admonishment. Further, we find the court's comments did not occur in the presence of the jury and did not affect the outcome of the trial. Therefore, we find Johnson's claim is without merit.

### B.    Probable Cause

¶31.    Johnson asserts that because his counsel failed to raise the issue of probable cause for the traffic stop, his counsel was rendered ineffective. Johnson seems to assert that Nelson lacked probable cause to stop Johnson. "Whether probable cause or reasonable suspicion exists is subject to a de novo review." *Eaddy v. State*, 63 So. 3d 1209, 1212 (¶11) (Miss. 2011). However, the de novo review is limited to the trial court's decision based on "historical facts reviewed under the substantial evidence and clearly erroneous standards." *Id*. Police officers may initiate an investigatory stop when they have "reasonable suspicion, grounded in specific articulable facts, that allows the officers to conclude the suspect is wanted in connection with criminal behavior." *Id*. at 1213 (¶14). Personal observation is one of two acceptable grounds for reasonable suspicion to make an investigatory stop. *Id*. at (¶15).

¶32.    Reasonable suspicion is the standard applied to an investigatory traffic stop, not probable cause. *Id*. Johnson was initially stopped because Nelson personally observed that Johnson's "seatbelt was not across him." Based on this personal observation, Nelson initiated

14

an investigatory traffic stop. It was only after having approached Johnson's vehicle and Johnson having rolled down his window that Nelson observed Johnson was in fact wearing his seatbelt with the shoulder strap tucked under his shoulder, in an improper manner. Thus, it was not possible for Nelson to see that Johnson was actually wearing his seatbelt without being any closer to the vehicle. We find that Nelson met the requisite standard. We find that had Johnson's counsel raised this issue at trial, it would have had no impact on the outcome. Thus, we find that Johnson's argument is without merit.

### C.  Continuance

¶33.    Johnson also asserts that his counsel was ineffective because his counsel should have asked for a continuance after allegations of five new charges were made. The State informed Johnson's trial counsel that the grand jury was considering other sale-of-cocaine charges against Johnson more than two weeks before trial. During that same time, the State informed trial counsel of the various plea offers that were currently available to Johnson. One of those offers was to wait on going to trial until after the grand jury had made a decision on the other charges that they were considering against Johnson. Johnson's trial counsel informed Johnson that waiting on the other charges under consideration would be best.

¶34.    Johnson refused and told his trial counsel that he wanted to go forward with trial on the charge for possession of marijuana in an amount less than thirty grams with intent to distribute, for which he was already under indictment. Ben Lang, Johnson's trial attorney, testified at the hearing for Johnson's JNOV motion that though he would have preferred to wait, he acted in accordance with the wishes of Johnson, as was Lang's duty. In this instance,

15

Johnson wanted to go on to trial and did not want to wait, even after Lang told Johnson it was best to wait. Therefore, we find that Johnson's claim is without merit.

### D. Johnson's Amended Brief

¶35. Johnson raises additional issues in his amended brief. Johnson asserts his trial counsel was ineffective because he did not object to testimony by Nelson and Huffman regarding sandwich bags found in Johnson's trunk, and testimony by Huffman regarding condoms found in Johnson's vehicle. Johnson submits that this was error because there were no sandwich bags or condoms entered into evidence.

¶36. "The absence of physical evidence does not negate a conviction where there is testimonial evidence." *Haywood v. State*, 130 So. 3d 1127, 1130 (¶11) (Miss. Ct. App. 2013). Here, Johnson testified that he was going to a party to share his marijuana, and Nelson testified that Johnson said the same to him. The fact that there were no sandwich bags or condoms entered into evidence is not controlling, as there was ample testimonial evidence of Johnson's intent to distribute the marijuana that he possessed. Johnson and his brother both testified that there were sandwich bags in the car, and Johnson also acknowledged in his testimony that there were condoms in the car. Even if his trial counsel would have objected, there is no indication that such an objection would have proved fruitful. We find that Johnson's assertion is without merit.

¶37. Johnson next asserts that his trial counsel was ineffective for failing to object to Coleman's testimony when he was not listed as a State witness. "The State has no duty to disclose the names of possible rebuttal witnesses unless the State has requested a notice of

alibi." *Jackson v. State*, 52 So. 3d 1203, 1208 (¶18) (Miss. Ct. App. 2010) (citing *Burnside v. State*, 912 So. 2d 1018, 1026 (¶18) (Miss. Ct. App. 2005)). Coleman was merely a rebuttal witness and not a witness for the State's case-in-chief. Thus, the State was not required to list Coleman in its witness list. We find Johnson's assertion is without merit.

## VI. Plain Error

¶38. Johnson argues plain error by requesting this Court recognize any plain error he failed to present or that this Court sees fit. "In order to prevail under the plain-error doctrine, an appellant must show that there was an error in the trial court and that the error resulted in a manifest miscarriage of justice." *Rodgers v. State*, 166 So. 3d 537, 543 (¶13) (Miss. Ct. App. 2014) (citation omitted) (quoting *Flora v. State*, 925 So. 2d 797, 811 (¶42) (Miss. 2006)). Johnson makes several claims without so much as a single supporting transcript or legal citation to show where there is an error or how it is an error. In this way, Johnson fails to show that any error resulted in a manifest miscarriage of justice, nor have we found any such error. Therefore we find his claim is without merit.

## VII. Recusal

¶39. In Johnson's amended brief, he asserts error because the circuit judge should have recused himself. Rule 1.15 of the Uniform Rules of Circuit and County Court Practice allows any party to move for the recusal of a judge "if it appears that the judge's impartiality might be questioned by a reasonable person knowing all the circumstances." URCCC 1.15. Rule 1.15 also requires a motion for recusal to be filed "within 30 days following notification to the parties of the names of the judge assigned to the case." *Id*. The record reflects that

17

Johnson never moved to have the trial judge recused from the trial proceedings, written or otherwise. "The failure to seek recusal generally is considered implied consent to have the judge go forward in presiding over the case." *Rice v. State*, 134 So. 3d 292, 299 (¶17) (Miss. 2014) (citing *Tubwell v. Grant*, 760 So. 2d 687, 689 (¶8) (Miss. 2000)). Because Johnson never raised the issue of recusal before the trial court, he consented to have the judge preside over the trial proceedings. Thus, any argument that the trial judge should have recused is barred.

¶40. Notwithstanding the bar, this Court "applies an objective test to determine whether a trial judge should have recused himself in a particular matter." *Id*. at (¶18). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Id*. (quoting *Rutland v. Pridgen*, 493 So. 2d 952, 954 (Miss. 1986)). The judge is presumed to be qualified and unbiased, and the challenger bears the burden of overcoming this presumption only by evidence raising a reasonable doubt as to the validity of the presumption. *Id*. "Where one actively engages in any way in the prosecution, he is disqualified from sitting as a judge in any matter which involves that conviction." *Id*. (citing *Banana v. State*, 638 So. 2d 1329, 1330 (Miss. 1994); Miss. Code of Jud. Conduct, Canon 3E(1)(b)).

¶41. Johnson asserts that the trial judge should have recused himself because the trial judge was the prosecutor in one of Johnson's previous felony convictions. The trial judge was in no way involved in the prosecution of Johnson's charge that was before the circuit court, and it is of no matter that he was a prosecutor for a prior conviction. Thus, Johnson's claim is

18

without merit.

### VIII.   Post-Conviction Bail

¶42.   Johnson appears to assert some form of error on the part of the trial court for denying his request for post-conviction bail pending his appeal. The burden is on the convicted to prove by clear and convincing evidence that his release would not constitute a special danger to any other person or to the community. Miss. Code Ann. § 99-35-115 (Rev. 2015). Further, the convicted must prove that a condition or conditions may be placed upon release that will reasonably assure his required appearance. *Id*. If bail is denied, the judge shall give the reasons for denial. *Id*. Denial of post-conviction bail is within the discretion of the trial court. *Busick v. State*, 906 So. 2d 846, 862 (¶¶48-49) (Miss. Ct. App. 2005).

¶43.   The trial judge specifically stated in the record that he did not find that Johnson had met his burden. The State cited, at the hearing on Johnson's motion for a JNOV, concern over the safety for a confidential informant being utilized in ongoing grand-jury proceedings on five sale-of-cocaine charges against Johnson. The State further noted that it found Johnson, as a habitual drug offender clearly still dealing in narcotics, was a clear threat to the safety of the community. Johnson failed to give any kind of assurance that the confidential informant was not endangered by Johnson's being out on bail, let alone clear and convincing proof. We find that his claim is without merit.

### CONCLUSION

¶44.   We affirm the trial court's denial of Johnson's motion for a directed verdict and JNOV and affirm his conviction for possession of marijuana in an amount less than thirty grams

19

with the intent to distribute and his sentence as a habitual and subsequent offender.

¶45.   **THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF POSSESSION OF AT LEAST TEN BUT LESS THAN THIRTY GRAMS OF MARIJUANA WITH THE INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER AND SUBSEQUENT DRUG OFFENDER OF SIX YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, AND TO PAY A $500 FINE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR.**